Acie SMITH, Sr., et al., Plaintiffs,

v.

Peggy EDMISTON, Shelby County Director of the Tennessee Department of Human Services, et al., Defendants.

No. C–76–78.

United States District Court,
W. D. Tennessee, W. D.

March 30, 1977.

942

Thomas M. Daniel, Memphis and Shelby County Legal Services Ass'n, R. Larry Brown, Memphis, Tenn., for plaintiffs.

James A. Hornsby, Tenn. Dept. of Human Services, Memphis, Tenn., John F. Southworth, Jr., Asst. Atty. Gen., Nashville, Tenn., for defendants.

J. Minor Tait, Jr., Memphis, Tenn., for Hon. Kenneth Turner.

## MEMORANDUM DECISION

McRAE, District Judge.

This is a case which considers the minimal due process requirements pertaining to phases of the proceedings in the Juvenile Court of Memphis and Shelby County, Tennessee, for the removal of children from the custody of their natural parents. More specifically, the issues to be determined are whether indigent parents have a right to be represented by Court-appointed attorneys in custody removal hearings, and whether the manner in which the Juvenile Court considers as evidence the reports of investigators meets minimal due process requirements.

Plaintiffs[1] are the natural parents of four minor children. On September 17, 1974, these children were the subject of a dependency and neglect hearing in the Memphis and Shelby County, Tennessee, Juvenile Court. The Juvenile Court held that the children were dependent and neglected children within the meaning of the laws of Tennessee, T.C.A. § 37–202(6) et seq., and ordered that they be removed from the custody of their parents and placed in the custody of the State of Tennessee Department of Public Welfare for placement in a foster home. Subsequently, plaintiffs filed a Petition for a Writ of Habeas Corpus in the state courts of Tennessee, seeking the release of the children. That Petition was not granted. Thereafter, this action was brought in this Court.

Plaintiffs' action is in two counts. Count I is a Petition for a Writ of Habeas Corpus seeking the release of petitioners' children from the custody of the Tennessee Department of Human Services. Count II is an action which names Judge Kenneth Turner as the defendant. The relief sought is to enjoin and to have declared unconstitutional the practice in the Memphis and Shelby County Juvenile Court, of conducting dependency and neglect hearings without providing counsel to indigent parents and without affording minimal due process. In

1. Although the parents have petitioned the Court for habeas corpus relief, they are also seeking declaratory relief. For convenience, they are called plaintiffs throughout this ruling.

Count II the plaintiffs allege that they are suing as representatives of the class of persons who are similarly situated.

■ This Court conducted an evidentiary hearing on the constitutional issues raised by the pleadings and to determine if this should be certified as a class action. On the class action issue the Court rules that this is not an appropriate class action case. Any declaratory relief should inure to the benefit of others who might be similarly situated.

As heretofore indicated, plaintiffs contend that the detention and restraint of plaintiffs' children pursuant to a proceeding wherein the parents were not afforded the right to counsel is a violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States. The facts surrounding the hearing are largely uncontroverted. Five persons were present at the Juvenile Court hearing, the two plaintiffs, a minister whom they had asked to appear in their behalf, and two representatives from the Tennessee Department of Human Services. Only three persons were heard from, the plaintiffs and the minister. Mrs. Smith's testimony consisted of a statement which Acie Smith characterized as an outburst and which he says communicated that she wanted her four children back. The entire hearing is alleged to have lasted approximately five minutes.

The plaintiffs were not represented by counsel at the hearing. Although there is a dispute as to whether plaintiffs were aware of the availability of free legal representation,[2] the defendant Kenneth Turner admits in his Answer that he does not advise parents of their right to counsel or of their right to have counsel appointed if they cannot afford counsel. Therefore, such advice was not given at the plaintiffs' hearing. The deposition of Judge Turner reflects that it is not uncommon for attorneys to appear in behalf of the parents. However, it is not his practice to advise parents of

their right to have an attorney and he does not appoint attorneys for indigent parents. His deposition does reflect that he does on appropriate occasions appoint an attorney *ad litem* for the child or children. Dep. of Judge Turner, page 33.

At the Juvenile Court hearing, no witnesses testified against the plaintiffs. The only evidence submitted on the issue of dependency and neglect was a written report submitted by the Tennessee Department of Human Services. This was submitted to the Judge. The plaintiffs were not furnished a copy of the report of the Department of Human Services nor was it read to them. Apparently the representatives of the Tennessee Department of Human Services were available at the hearing if necessary to testify.

These facts surrounding the use of the report give rise to the plaintiffs' second major complaint, i. e., that they were not afforded the opportunity to confront and cross-examine the witnesses against them. Since the report was not made available to plaintiffs and neither its author nor the persons whose statements appeared in the report testified at the hearing, plaintiffs contend that they were denied the right to confront and cross-examine the witnesses against them. Furthermore, since the report was the only evidence against them considered by the Judge in making his ruling, plaintiffs contend that their rights were determined largely on the basis of hearsay evidence which was not disclosed to them. This, they contend, violates their due process rights. Upon consideration of the record in this cause and the applicable law, this Court concludes that the guarantees of due process of law require that before the Juvenile Court conducts a dependency and neglect and possible removal of custody hearing, the parents must be advised of their right to be represented by a lawyer and, if they are indigent, that Court-appointed counsel be provided if the parents do not waive that right. The Court

---

2. Plaintiffs are represented in this proceeding by lawyers affiliated with the Legal Services Association of Memphis.

reaches these conclusions based upon the following considerations.

■ The determination of what procedural safeguards are necessary in a given proceeding must be evaluated in the light of the nature of the proceeding and the nature of the interest affected. The extent to which procedural due process must be afforded a litigant is influenced by the extent to which the person affected may be "condemned to suffer grievous loss" and depends upon whether the person's interest in avoiding that loss outweighs the governmental interest in summary adjudication. *Goldberg v. Kelly*, 397 U.S. 254, 262–263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

The interest being determined in a dependency and neglect hearing is the custody and control of the child. The Supreme Court has long recognized the importance of the family and the right of the parent to raise his child. In *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), the Supreme Court summarized its earlier decisions in this area by stating:

> The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed "essential," . . . "basic civil rights of man," . . . and "[r]ights far more precious . . . than property rights," . . . .. "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can [n]either supply nor hinder." . . . The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, . . . the Equal Protection Clause of the Fourteenth Amendment, . . . and the Ninth Amendment. (Citations omitted.) 405 U.S. at 651, 92 S.Ct. at 1212.

It is thus evident that the interest of parents in the custody and control of their children is an interest which has undergone constitutional scrutiny and received constitutional protection from the Supreme Court.

Numerous state courts have held that due process of law as guaranteed in the state and federal constitutions requires that indigent parents must be furnished attorneys at government expense in removal of custody proceedings. *In re Welfare of Myricks*, 85 Wash.2d 252, 533 P.2d 841 (1975); *Crist v. Division of Youth and Family Services*, 128 N.J.Super. 402, 320 A.2d 203 (1974); *In Interest of Friesz*, 190 Neb. 347, 208 N.W.2d 259 (1973); *Danforth v. State Dept. of Health and Welfare*, 303 A.2d 794 (Me. 1973); *In re B*, 30 N.Y.2d 352, 334 N.Y.S.2d 133, 285 N.E.2d 288 (1972); *State v. Jamison*, 251 Or. 114, 444 P.2d 15 (1968).

A California state court found that there was no statutory or constitutional right to appointed counsel for either parent or child in a dependency or termination of rights proceeding, *Robinson v. Kaufman*, 8 Cal. App.3rd 783, 87 Cal.Rptr. 678 (1970), cert. denied 402 U.S. 964, 91 S.Ct. 1624, 29 L.Ed.2d 128 (1971). The denial of certiorari by the Supreme Court of the United States was over the dissents of Justices Douglas and Black. In his dissent to the denial of certiorari Mr. Justice Black said:

> . . . The necessity of state-appointed counsel is particularly acute in cases like one of those before us, *Kaufman v. Carter*, where the State initiates a civil proceeding against an individual to deprive her of the custody of her children. Here the State is employing the judicial mechanism it has created to enforce society's will upon an individual and take away her children. The case by its very nature resembles a criminal prosecution. The defendant is charged with conduct—failure to care properly for her children—which may be criminal and which in any event is viewed as reprehensible and morally wrong by a majority of society. And the cost of being unsuccessful is dearly high—loss of the companionship of one's children. 402 U.S. at page 959, 91 S.Ct. at page 1627.

As the Supreme Court has stated in a related context, a litigant "needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts,

to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it." *In Re Gault*, 387 U.S. 1, 36, 87 S.Ct. 1428, 1448, 18 L.Ed.2d 527 (1967). In that case, the Supreme Court held that in Juvenile Court "delinquency" proceedings (criminal), a child and his parent must be advised of their right to be represented by counsel, and, if they are unable to afford counsel, that counsel will be appointed.

■ From all of the above, it is apparent that the due process clause requires that parents in dependency and neglect proceedings be advised of their right to be assisted by counsel and if they cannot afford counsel that counsel be appointed for them unless they knowingly waive their right to counsel.

The defendants argue that due process protection is not required because a neglect proceeding is "non-adversarial" in nature and because the parents' interest are not the principal interests at stake in the proceeding. The deposition of the defendant Judge Turner reflects that he quite properly places the primary interest in this type of proceeding upon the welfare of the child. His deposition also reflects that the vast majority of the dependency and neglect proceedings are uncontested. Many proceedings of this sort are conducted in the voluntary absence of the parents. A large number of them are applications by grandparents of the children, who seek an adjudication of legal custody in order to comply with Department of Welfare regulations which are required for obtaining financial assistance. However, when the petition is filed against the parents who have custody of their children and those parents contest the allegations of the petition, that proceeding is undoubtedly adversarial. It is in these proceedings, which apparently are a relatively small percentage of this type of proceeding, that the parents need the guiding hand of counsel.

It is therefore the holding of this Court that parents whose children are the subject of dependency and neglect hearings are entitled to the assistance of counsel under the due process clause of the Fourteenth Amendment and must be appointed counsel if they cannot afford counsel unless this right is knowingly waived.

■ The other constitutional issue raised in this case asserts that plaintiffs have been denied their rights to due process by virtue of the procedures which are followed in dependency and neglect proceedings in the Juvenile Court. The Complaint and the argument of the plaintiffs assert that the plaintiffs have been denied a right to confront and cross-examine the witnesses against them. This suggests that the plaintiffs are contending that the procedures followed in the Juvenile Court of Memphis and Shelby County, Tennessee, violate the plaintiffs' constitutional rights to confrontation as set forth in the Sixth Amendment to the Constitution. This must be rejected because that amendment pertains to "criminal prosecution" and the dependency and neglect proceedings are not criminal prosecutions. However, this Court does conclude that certain procedures which were followed in the hearing of the plaintiffs did not meet the minimal standards of due process.

Dependency and neglect cases in the Juvenile Court of Memphis and Shelby County, Tennessee, are investigated by trained field workers who are employed by the Department of Human Services, an arm of the state of Tennessee. These workers prepare a written report which is submitted to the Judge of the Juvenile Court.

Judge Turner testified in his deposition on page 15 that the workers usually rush right from their typewriter to the courtroom with their reports. The reports contain some hearsay. The Judge reads the report and if there is an attorney representing the parents he furnishes a copy of the report to the attorney. However, in the instant case there was no attorney and the report was not furnished the plaintiffs. Representatives from the Department of Human Services are available in the courtroom at the time that the matter is considered by the Judge but they do not testify unless called upon to do so and in the in-

stant case did not testify at the hearing where the custody of plaintiffs' children was removed from them.

The deposition of Judge Turner indicates that he does give the parents a right to be heard if they care to do so. Dep. page 21. However, as previously indicated, they might be without counsel.

 The deposition of Judge Turner also reflects that in dependency and neglect hearings he would not grant a petition if the only evidence was uncorroborated hearsay and the content of the hearsay was denied by the parents. Dep. page 68. This Court is of the opinion that the mere fact that hearsay evidence is permitted to be introduced in a civil proceeding does not render that proceeding inadequate from a minimal due process standpoint. However, this Court is of the opinion that the minimal standards of due process are not met if the trier of fact considers the contents of a report but does not disclose the contents of the report to the parents whose children might be taken from them as a result of the hearing. It would appear that the contents of the report might be disclosed in one or more of several ways: permitting the parents to read the report, reading it to them or having the person or persons who are familiar with the contents of the report testify.[3] As previously indicated, this would not preclude the admission of some hearsay evidence.

For the above reasons this Court is of the opinion that the Writ of Habeas Corpus should issue and the custody of the children of the plaintiffs should be returned to the plaintiffs unless another dependency and neglect hearing is conducted within sixty days. At said hearing the plaintiffs shall be advised of their right to an attorney and if they cannot afford one the Court will appoint an attorney for them.

The Court also grants declaratory relief with regard to some of the issues presented in Count Two. The declaratory relief shall be that minimal standards of due process

are not met in dependency and neglect hearings when the trier of fact relies upon adverse contents of an investigator's report without disclosing the contents of the report to the parents or other person or persons who have custody of the children with whom the hearing is concerned. This Court does not consider that injunctive relief against Judge Kenneth Turner is necessary or appropriate, because the minimal due process standards required by the United States Constitution may be easily granted in the re-hearing which Count One requires.

This Court also wishes to emphasize that it has not reviewed the merits of the determination by Judge Turner under the laws of Tennessee with regard to the rights of the plaintiffs to custody of their children. This Court's role arises by virtue of the United States Constitution, which this Court has interpreted in the manner hereinbefore set forth. As previously indicated, the problems raised by the proceeding would occur in relatively few dependency and neglect proceedings which are conducted in that very busy Juvenile Court.

---

**3.** There may be occasions when the source of information must remain confidential. However, the content should be disclosed.